kaw

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 08-40034-JAR |
| | ) | |
| MICHAEL L. MARTIN | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

Before the Court is defendant Michael L. Martin's Motion to Suppress (Doc.19).  A

suppression hearing was held on December 22, 2008, at which time the Court took the matter

under advisement.  After reviewing the briefs, the Court is ready to rule.  For the reasons stated

below, defendant's motion is denied.

**Background**

On December 29, 2007, at approximately 5:00 P.M., Detective Wheeles of the Topeka

Police Department received a phone call from his superior requesting that Wheeles report to the

scene of a shooting.  Wheeles was told that an African-American male, five feet eight inches tall,

weighing 180-200 pounds, fled the scene of the shooting wearing a fur lined jacket.  After

further investigation, Wheeles was informed that the man might have been Michael Johnston,

also known as "Kalil."  Officers ran a check and found that Michael Johnston was the boyfriend

of Ora Mae Hundall, who resided on Lime Street in Topeka.  The officers were able to find a

picture of Ms. Hundall and then proceeded to her residence.  By the time Wheeles and his

partner arrived at the residence of Ms. Hundall, the officers knew that they were looking for an

African-American male, about five feet eight inches tall, wearing a fur lined jacket, possibly

carrying a weapon, named Michael Johnston, who had a street name of "Kalil," and was the boyfriend of Ms. Hundall, of whom officers had a picture.

When Detective Wheeles and his partner arrived at Hudnall's residence on Lime Street, they noticed that it was a four-plex apartment building, and that the main entrance door to the entire building was locked. Wheeles's partner walked around the exterior of the building to see if any lights were on in the building. Moments later, Wheeles heard people inside the building opening the main entrance door. When the door opened, Wheeles immediately recognized Ms. Hundall from the photo, and saw that the African-American man accompanying her was wearing a fur lined jacket. Ms. Hundall and the man stood in the open doorway of the four-plex as Wheeles asked the man's name. The man responded that his name was Michael Martin[1] and stated that he had "something on him." Michael Martin then immediately took a step back, turned around, and placed his hands down in front of him where Wheeles could not see his hands. Wheeles ordered Martin to place his hands on the wall, while simultaneously stepping into the open doorway and bracing Martin against the wall until his partner was able to help handcuff Martin. The officers retrieved a gun and a magazine from Martin's person.

During the suppression hearing, Detective Wheeles testified that he stepped into the doorway to close the distance between he and Martin when Martin turned and placed his hands in front of him hidden from Wheeles's view. Detective Wheeles testified that the entire incident from the moment Martin identified himself, took about three seconds.

**Discussion**

Defendant argues that the officers violated his Fourth Amendment rights by entering his

---

[1]Wheeles heard the man say "Michael" only; Wheeles's partner heard "Michael Martin."

home without a warrant or exigent circumstances, and by arresting him without probable cause. He argues that when the officers crossed the threshold of the entrance to the four-plex, they entered his home and as a result the evidence obtained should be suppressed. He further argues that the subsequent warrant issued to search his house was issued based on fruit of the illegal entry into his home and illegal arrest. The government objects, noting that the officers did not enter defendant's home; rather, they encountered defendant in the common area of the four-plex.

Under the Fourth Amendment, a person's home is afforded the maximum amount of protection from government intrusion.[2] Consequently, searches and seizures inside a home without a warrant are presumptively unreasonable[3] absent exigent circumstances.[4] The issue presented here is whether defendant had an expectation of privacy in the common area of this four-plex apartment. Generally, a person has an expectation of privacy if he has a subjective expectation of privacy, and it is one that society is prepared to recognize as objectively reasonable.[5] Although the Tenth Circuit has not explicitly addressed this issue, it is generally recognized that there is no expectation of privacy in common areas of an apartment building.[6] But, in determining whether there is an expectation of privacy in a common area, courts consider the control a tenant has over the common area, whether visitors and friends of other tenants have access to the area, whether deliveries are made by use of the common area, and whether workers

---

[2]*Welsh v. Wisconsin*, 466 U.S. 740, 748 (1984).

[3]*Id.* at 749.

[4]*United States v. Scroger*, 98 F.3d 1256, 1259 (10th Cir. 1996).

[5]*Katz v. United States*, 389 U.S. 347, 361 (1967).

[6]*See United States v. Barrows*, 481 F.3d 1246, 1249 (10th Cir. 2007); *See also United States v. Broadway*, 580 F. Supp. 2d 1179, 1193 (D. Colo. 2008).

and the landlord have total access to the area.[7]

 In this case, the defendant was arrested at the front exterior door of the four-plex, an entrance which led to a common hallway which in turn led to four separate apartments.  This hallway was used by all the tenants and anyone else gaining access to the building.  But the front door was locked, meaning those without a key, presumably everyone but the tenants and landlord, did not have access to the common area.  Defendant presented evidence that at the time of his arrest, his television was sitting in the hallway, evidencing his subjective expectation of privacy in that common area.  Indeed, storing a valuable possession in a common area might support a subjective expectation of privacy that is objectively reasonable.

 Here, however, the evidence is lacking.  There was no evidence as to how long the television sat in the hallway.  Had it been placed there momentarily until the defendant or some authorized person could pick it up and take it elsewhere?  Nor was there evidence as to why the television was sitting on the floor in the hallway.  Was it there because defendant or others with access to the common area watched the television there, or was the television broken and put there pending defendant disposing of it?

 The Court must find that society would recognize an expectation of privacy as reasonable.[8]  It is undisputed that although the entry doorway to the common area was locked, each tenant had access to the hallway, and defendant could not show an exclusive right to control

[7]*United States v. Miravalles*. 280 F.3d 1328, 1332 (11th Cir. 2002); *United States v. Nohora*, 3 F.3d 1239, 1242 (9th Cir. 1993); *United States v. Concepcion*, 942 F.2d 1170, 1172 (7th Cir. 1991); *United States v. Cruz Pagan*, 537 F.2d 554, 558 (1st Cir. 1976).

[8]*United States v. Garner*, 338 F.3d 78, 80 (1st Cir. 2003); *United States v. Mendoza*, 281 F.3d 712, 715 (8th Cir. 2002) (en banc); *Miravalles*. 280 F.3d at 1333; *United States v. McCaster*, 193 F.3d 930, 933 (8th Cir. 1999); *United States v. Hawkins*, 139 F.3d 29, 32 (1st Cir. 1998); *Nohora*, 3 F.3d at 1242; *United States v. Acosta*, 965 F.2d 1248, 1252 (3d Cir. 1992); *United States v. DeWeese*, 632 F.2d 1267, 1270 (5th Cir. 1980).

4

the hallway.  And while one circuit has found an objective expectation of privacy in common areas when the apartment entry ways are locked to the general public and officers surreptitiously find their way in the common areas,[9] other circuits denounce such a view.[10]  In any event, the Sixth Circuit case is distinguishable.

In *United States v. Carriger*, an officer gained access to the apartment building when workers exited the building.  The officer then searched the corridors of the building for a suspect who was eventually observed giving defendant a green bag at his apartment door.  The officer believed that the green bag contained contraband and returned in a few minutes with other officers, who then forced their entry into defendant's apartment.[11]  The Sixth Circuit reasoned that when an officer gains access to a locked building without authority or invitation, the evidence gained should be suppressed, as this is in accordance with decency, security, and the notion that government officials should be subjected to the same rules of conduct that direct a citizen.[12]  Here the facts are quite different.  Officers encountered the defendant at the open door of the apartment building.

Here the officers had probable cause to arrest the defendant.  At the time, the officers could fully view the defendant and his companion standing in the open doorway.  "Probable cause to arrest exists only when the 'facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a

---

[9]*See United States v. Carriger*, 541 F.2d 545, 550 (6th Cir. 1976) (denouncing forcible or peaceable entries by law enforcement into locked apartment buildings).

[10]*See supra*, note 8.

[11]*Carriger*, 541 F.2d at 548.

[12]*Id*. at 552.

man of reasonable caution in the belief that an offense has been or is being committed.'"[13] Detective Wheeles and his partner knew or had reasonably trustworthy information that defendant fit the description of the suspect in a shooting that day: (1) he was an African-American male; (2) he was wearing a fur lined jacket; (3) his first name was Michael; and (4) he was the companion of Ora Mae Hundall, who resided at the building and who was in fact with him as he stood at the threshold of the open door.  Further, the defendant identified himself as "Michael Martin."

Moreover, within three seconds, exigent circumstances arose, creating a risk to officer safety, and justifying the officers passing through the threshold of the door to arrest the defendant.  Immediately after identifying himself as Michael Martin, the defendant stated that he had "something on him."  Detective Wheeles testified officers knew that to be street lingo for someone who had a weapon on their person.  Contemporaneously, the defendant reeled around, so the officers could not see his hands, obviously creating a reasonable concern that the defendant was about to use a firearm.  Detective Wheeles testified that he reacted because of officer safety.[14]

A warrantless arrest in a home is proper where the officers have objectively reasonable grounds to believe that there is an immediate need to protect their lives or others.[15]  Officers, may enter a person's house and make an arrest where there is probable cause and exigent

---

[13]*United States v. Valenzuela*, 365 F.3d 892, 898 (10th Cir. 2004) (quoting *United States v. Edwards*, 242 F.3d 928, 934 (10th Cir. 2001)).

[14].*See United States v. King*, 222 F.3d 1280, 1287 (10 th Cir. 2000) (holding that tackling defendant at door of his home was reasonable under the Fourth Amendment because officers knew that defendant was dangerous, that he was willing to use his weapon, and that another drug dealer might be around).

[15]*Cortez v. McCauley*, 478 F.3d 1108, 1124 (10th Cir. 2007) (en banc).

circumstances.[16]  In determining whether exigent circumstances exist, the test is whether the officers had a reasonable objective basis to believe that their safety was in danger, and the manner and scope of the search was reasonable.[17]  Accordingly, the Court finds that the defendant had no reasonable expectation of privacy implicating the Fourth Amendment, but even if the Fourth Amendment protected him from a warrantless search in that place, the officers had probable cause along with exigent circumstances to make the arrest.

**IT IS THEREFORE ORDERED THAT** defendant's Motion to Suppress (Doc. 19) is denied.

**IT IS SO ORDERED.**

Dated:  January 12, 2009

 S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE

---

[16]*United States v. Reeves*, 524 F.3d 1161, 1169 (10th Cir. 2008).

[17]*United States v. Najar*, 451 F.3d 710, 718 (10th Cir. 2006).

7