kaw

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   Case No. 08-40034-JAR |
| | ) |
| MICHAEL L. MARTIN | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM AND ORDER

Defendant Michael L. Martin is charged with possession of a firearm in violation of 18 U.S.C. § 922(g).  On July 17, 2008, defendant filed a Motion to Suppress (Doc. 19).  Before the Court is defendant's Motion to Reconsider the Court's January 12, 2009, Memorandum and Order (Doc. 54) ("Order") denying his motion to suppress.  For the reasons set forth below, defendant's motion to reconsider is granted; however, defendant's motion to suppress is again denied.

## Standard

Under D. Kan. R. 7.3(b), a motion to reconsider is proper where it is based on "(1) an intervening change in controlling law, (2) the availability of new evidence, or (3) the need to correct clear error or prevent manifest injustice."  A motion to reconsider is appropriate where the court has misapprehended the facts, or made findings of facts that are not supported by the record.[1]  It is not proper, however, if the defendant merely seeks a second bite at the apple.[2]

---

[1]*Blume v. Meneley*, 283 F. Supp. 2d 1178, 1179-80 (D. Kan. 2003).

[2]*United States v. Maxfield*, No. 1:04CR00149 DS, 2007 WL 121128, at *1 (D. Utah Jan. 11, 2007).

Whether to grant a motion to reconsider is within the court's discretion.[3]

Defendant's basis for reconsideration boils down to alleged errors in the Court's findings of fact.  Defendant argues that the Court failed to consider whether there was any evidence that other tenants lived in the four-plex, that the Court's findings of fact from which it concluded that there was probable cause, were only weakly supported by the record,[4] and that the record only establishes that the officers themselves created the exigent circumstances.  Defendant argues that he had a reasonable expectation of privacy in the common area of his four-plex; thus, officers were required to have probable cause in addition to exigent circumstances to enter the threshold and arrest him.

Defendant's arguments are largely a rehash or its factual contentions and arguments.  The Court nonetheless grants defendant's motion for reconsideration.

## **Facts**

On December 29, 2007, at approximately 5:00 p.m., Detective Wheeles of the Topeka Police Department received a phone call from Detective Biggs requesting that Wheeles report to the station to help in the investigation of a shooting.  Biggs told Wheeles that a man had been shot in the chest one time and that people inside the apartment at the time described the suspect as an African-American male with a street name of Kalil.  Witnesses told Biggs that the suspect fled the scene on foot armed with the firearm used in the shooting and wearing a heavy fur-lined

---

[3]*Bosch v. McKune*, No. 05-3046-JWL, 2006 WL 1007257, at *2 (D. Kan. Apr. 17, 2006) (citing *Adams v. Reliance Standard Life Ins. Co.*, 225 F.3d 1179, 1186 (10th Cir. 2000)).

[4]Although both parties cite that the officers knew information about defendant's height and weight, there is no evidence in the record that Wheeles knew defendant's height and weight.  In any event, the Court does not rely on that information in its probable cause determination.  This fact is the only finding the Court thinks necessarily requires correction from the previous Order, even though defendant does not assert that error.

winter coat.  A witness described the coat as a brown coat with fur-trim.  Another witness's account was that the suspect was wearing a gray coat and was running from the scene with two handguns; however, this second witness's description of a gray coat was never communicated to Wheeles.

Biggs ran an alias check on the name Kalil and found the name Michael Johnston as a possible match from another investigative file.  The officers were unable to verify that the name Michael Johnston was the correct name for Kalil because the information could not be linked to a social security number or date of birth.  In addition, officers learned from the other investigative file that Michael Johnston lived in the area of the shooting.  Officers also learned that Michael Johnston was affiliated with Ora Mae Hundall.  The officers located a photograph of Hundall and her address from other police reports and booking sheets.  The officers proceeded to Hundall's residence.  By the time Wheeles and his partner arrived at Hundall's residence, the officers believed that they were looking for an African-American male wearing a heavy fur-lined coat and possibly carrying a weapon, who was named Michael Johnston, with a street name of "Kalil," and who was the boyfriend of Hundall, of whom officers had a photograph.

When Detective Wheeles and his partner arrived at the residence, Wheeles recognized the four-plex from previous investigations.  The main entrance door to the entire building was locked.  Wheeles's partner walked around the building to see if any lights were on in the complex, but could not get the attention of any resident.  Moments later, Wheeles heard people approaching the main entrance door.  When the door opened, Wheeles immediately recognized Hundall from the photo and saw that the man accompanying her was wearing a heavy fur-lined coat.  Hundall and the man stood in the doorway of the four-plex as Wheeles asked the man's

name.  He responded Michael Martin, but Wheeles only heard the suspect say "Michael."

As the defendant said his name, he took a step back into the apartment hallway.  Wheeles testified that when defendant took a step back, he thought defendant was possibly retreating.  Wheeles then identified himself as a police officer and told defendant to put his hands on the wall.  Defendant turned around and placed his hands down before him and said that he had "something" on him.  Wheeles entered the door of the four-plex  and braced the defendant against the wall in the common area,to handcuff him.  The officers retrieved a gun and a magazine from the man's person.

## Discussion

Defendant argues that he had a reasonable expectation of privacy in the common area of the four-plex because his television was sitting in the common area, in the hallway by his apartment door.  Additionally, he argues that the officers did not have probable cause or reasonable suspicion to seize him when he opened the door to the four-plex.  Finally, defendant argues that there were no exigent circumstances to justify arresting him without a warrant in the common area of the four-plex.

### Expectation of Privacy in the Four-Plex

If the Court assumes that defendant was the only tenant in the building, the issue presented is whether defendant had a reasonable expectation of privacy in the common area of the four-plex.  Defendant argues on reconsideration that because there is no evidence indicating that other residents lived in the four-plex, the cases relied on in the Court's prior Order are inapplicable.  Specifically, defendant contends that he had an expectation of privacy because (1) no evidence was adduced that other tenants lived in the four-plex or that anyone else had access

4

to the building, (2) he had a television in the hallway, and (3) he was the only tenant who could have opened the main entrance door to the four-plex.

Although there was no evidence that there were actually other tenants living in the four-plex, the evidence revealed at the hearing illustrates that the four-plex was used as four separate, private living areas and that defendant had access only to his living area.  Once the main entrance door to the four-plex opens, the hallway leads to two private living areas downstairs and two upstairs.  When Wheeles and his partner arrived at the four-plex, they first scanned the entire building and walked around to see if any lights were on in the other living areas to contact a resident and gain admission into the four-plex.  Unable to contact any other tenants, the officers returned to the front door when they heard someone approaching.  Subsequently, defendant was arrested in the hallway.[5]

Defendant's argument that officers violated his Fourth Amendment right is only viable if he can show that he had a subjective expectation of privacy in the hallway and that subjective expectation was one that society is willing to accept as objectively reasonable.[6]  "An expectation of privacy does not give rise to Fourth Amendment protection . . . unless society is prepared to accept that expectation as objectively reasonable."[7]  In this case, the Court, like all the circuits that have considered this issue, find that defendant's subjective expectation of privacy in the

---

[5]Even if there was no evidence that any other tenant, landlord, or visitors walked the hallways, the Court must presume that the hallway was the only route to the other living areas because there was no other entrance and no other way to get to the second floor living areas.  In that instance, how else would anyone get to the other areas but for the common hallway?

[6]*California v. Greenwood*, 486 35, 40 (1988).

[7]*Id.*

5

hallway is not one that society is willing to accept as objectively reasonable.[8]

<u>Expectation of Privacy in the Threshold of the Four-Plex</u>

Under the Fourth Amendment and *Payton v. New York*,[9] a person's home is afforded the maximum amount of protection from government intrusion.[10]  Consequently, searches and seizures inside a home without a warrant are presumptively unreasonable[11] absent exigent circumstances.[12]  Even if the Court were to assume that defendant had an expectation of privacy in the hallway, the Supreme Court has stated repeatedly that "'[w]hat a person knowingly exposes to the public, even in his own house or office, is not a subject of Fourth Amendment protection.'"[13]

The Court's reasoning in *United States v. Santana* has been applied to other situations where a defendant exposes himself to the public.  For instance, in *United States v. Vaneaton*,[14] the Court reasoned that defendant had no expectation of privacy when he opened his door to the

---

[8]*United States v. Garner*, 338 F.3d 78, 80 (1st Cir. 2003); *United States v.  Mendoza*, 281 F.3d 712, 715 (8th Cir. 2002) (en banc); *United States v. Miravalles*. 280 F.3d 1328, 1333 (11th Cir. 2002); *United States v. McCaster*, 193 F.3d 930, 933 (8th Cir. 1999); *United States v. Hawkins*, 139 F.3d 29, 32 (1st Cir. 1998); *United States v. Nohora*, 3 F.3d 1239, 1242 (9th Cir. 1993); *United States v. Acosta*, 965 F.2d 1248, 1252 (3d Cir. 1992); *United States v. DeWeese*, 632 F.2d 1267, 1270 (5th Cir. 1980).
    Even Sixth Circuit precedent, where Courts conclude that a person may have an expectation of privacy in the locked areas of an apartment building, is inapplicable to this case, as defendant voluntarily opened the front door to the four-plex.  *See United States v. Carriger*, 541 F.2d 545 (6th Cir. 1976).

[9]445 U.S. 573 (1980).

[10]*Welsh v. Wisconsin*, 466 U.S. 740, 748 (1984).

[11]*Id.* at 749.

[12]*United States v. Scroger*, 98 F.3d 1256, 1259 (10th Cir. 1996).

[13]*United States v. Santana*, 427 U.S. 38, 42 (1976) (quoting *Katz v. United States*, 389 U.S. 347, 351 (1967)).

[14]49 F.2d 1423 (9th Cir. 1994).

public.[15]  Officers knocked on the door to defendant's room.  Defendant looked out the window and opened the door.[16]  When he did, officers asked him his name and he stated Vaneaton.[17]  The officers then arrested him.  The Court reasoned that defendant had no expectation of privacy when he opened the door and exposed himself and the surrounding area to the officers.[18]  Furthermore, unlike other cases where threat and coercion are used to make a suspect open the door, defendant in this case acted voluntarily.[19]

In *United States v. Carrion*,[20] the Court determined that the defendant had no expectation of privacy when he was arrested at the open door to his hotel room.[21]  An informant told agents that defendant was staying at a certain hotel and hotel personnel told the agents defendant's room location.  Once in the hallway, officers asked an employee to knock and find out if anyone was in the room.[22]  When the employee knocked and announced "housekeeping," defendant opened the door.[23]  The officers recognized defendant and pointed their guns at him and told him to place his hands up.[24]  The defendant then stated that he had a weapon.  The Court reasoned

---

[15]*Id*. at 1427.

[16]*Id*. at 1425.

[17]*Id*.

[18]*Id*. at 1427.

[19]*Id*.

[20]809 F.2d 1120 (5th Cir. 1987).

[21]*Id*. at 1128.

[22]*Id*. at 1123.

[23]*Id*.

[24]*Id*.

that defendant had no expectation of privacy at the open door of his hotel room because he was in a public place at the time.[25]

In *United States v. Johnson*,[26] the Court found that defendant was arrested illegally when officers knocked and announced fictitious names.  When defendant opened the door, the officers were waiting outside with weapons drawn.[27]  The Court reasoned that defendant's initial exposure to the agents was not consensual and voluntary because the officers lied to get defendant to open the door.[28]

In *United States v. Reeves*,[29] defendant was arrested after the officers knocked on his windows and doors for twenty minutes.  The Court determined that defendant was arrested before he opened the door because he was effectively ordered to do so by police conduct outside his house.[30]  The Court stated that "[o]pening the door to one's home is not voluntary if ordered to do so under color of authority."[31]

The cases above illustrate that an officer may arrest a defendant without a warrant when he voluntary exposes himself to the public.  In cases where a warrantless arrest was found violative of the Fourth Amendment, the defendant was seized before exposing himself to the public or was deceived into exposing himself to the officers.  Based on these guideposts,

---

[25]*Id.* at 1128.

[26]626 F.2d 753, 757 (9th Cir. 1980).

[27]*Id.*

[28]*Id.*

[29]524 F.3d 1161 (10th Cir. 2008).

[30]*Id.* at 1165.

[31]*Id.* at 1167.

defendant's arrest in this case was not violative of the Fourth Amendment and *Payton v. New York*.

According to Wheeles, defendant voluntarily opened the main entrance door to his four-plex. He did not open the door to a knock from the officers or from a ruse. He opened the door like he would any other day, not expecting officers to be located outside his door. Under those circumstances, defendant exposed himself to the public and had no reasonable expectation of privacy.

Probable Cause/Reasonable Suspicion

Defendant had no expectation of privacy when he opened the door to his four-plex and revealed himself to the public; therefore, the officers merely needed probable cause to arrest or reasonable suspicion to seize him.

In the previous Order denying defendant's motion to suppress, the Court determined that when Officer Wheeles and his partner arrived at the four-plex and the main entrance door opened, the officers knew that the suspect was African-American; the suspect was wearing a heavy fur-lined coat; the suspect's first name was Michael; and the suspect was staying with Hundall, who resided at the four-plex and of whom officers had a photograph. Defendant argues on reconsideration that these facts together did not provide the officers with probable cause to arrest because the information relayed to Wheeles by Biggs was unreliable. Specifically, defendant argues that the government has not met its burden by showing that the witness accounts that the suspect was wearing a fur-lined coat were correct, as one witness stated that the suspect was wearing a gray coat. Additionally, Biggs was unable to substantiate the information connecting the name "Kalil" to Michael Johnston. Finally, because Wheeles had no idea how

Biggs' concluded that Michael was the boyfriend of Hundall, that information was untrustworthy.

Assuming that defendant was arrested at the time Wheeles told him to place his hands on the wall, the officers had probable cause to believe that defendant had committed a crime. Probable cause exists where the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent officer in believing that defendant had committed or was committing a crime.[32] "'Probable cause must be evaluated in light of the circumstances as they would have appeared to a prudent, cautious, trained police officer.'"[33] A probable cause determination is based on the totality of the circumstances.[34]

Officers may rely on information from fellow officers for purposes of probable cause.[35] In this case, Biggs relayed to Wheeles that the suspect was wearing a fur lined coat, was a black male, had the street name of "Kalil," was the boyfriend of Ora Mae Hundall, and was possibly named Michael Johnston.  Defendant's claim that the information that Biggs found was unreliable is belied by the fact that it was accumulated from former police reports and arrest records and corroborated by statements from witnesses.[36]  Officers were able to find that Michael Johnston was the possible boyfriend of Hundall from an arrest report of Hundall, which included

---

[32]*United States v. Snow*, 82 F.3d 935, 942 (10th Cir. 1996).

[33]*Id.* (quoting *United States v. Morgan*, 936 F.2d 1561, 1568 (10th Cir. 1991)).

[34]*Morgan*, 936 F.2d at 1568.

[35]*United States v. Miramonted*, 365 F.3d 902, 905 (10th Cir. 2004).

[36]*See Cortez v. McCauley*, 478 F.3d 1108, 1122 (10th Cir. 2007) (noting that corroboration is not necessarily required when officers have victim-witness accounts).

a photograph of her.  Additionally, officers were able to find the name of Michael Johnston from

a street report showing a street name of "Kalil."  In fact, Wheeles testified that street names are

usually accompanied by fake last names while the first name of the individual is known by other

persons on the *streets*.

Finally, defendant's argument that the information received from the witnesses at the

scene of the shooting is unreliable because someone stated that the jacket was brown while

another reported that it was gray does not make the information gathered by Biggs and relayed to

Wheeles unreliable.  First, when evaluating witness accounts, officers are to presume that

witnesses are telling the truth about their account.[37]  Furthermore, the information gathered is not

unreliable as all the witnesses agreed that the suspect was wearing a fur lined coat.

The information gathered by Biggs from the scene of the crime describing the individual

and the investigation done at the police station to find the suspect's name and acquaintance,

when coupled together and confirmed by Wheeles at the doorway, gave the officers probable

cause to arrest defendant when he announced his name as "Michael" at the open main entrance

door of the four-plex.[38]

Exigent Circumstances

Exigent circumstances for the officers to make the arrest existed, even assuming that the

doorway of the four-plex and the hallway was protected under the Fourth Amendment.

Defendant argues that the officers created the exigency at the doorway of the four-plex and that

_____

[37]*See Easton v. City of Boulder*, 776 F.2d 1441, 1449-50 (10th Cir. 1985) (discussing the relaxed standard of scrutiny to be applied to citizen-witness accounts in determining probable cause).

[38]*See United States v. Miller*, 532 F.2d 1335, 1337 (10th Cir. 1976) (stating that officer "checked out his suspicion first and it was not until after these suspicions had been confirmed that the arrests were made.").

11

defendant was seized before any facts of exigency could come about.  When an officer makes an arrest in a person's home, the officer either needs a warrant or probable cause plus exigent circumstances.[39]  The government bears the burden to prove that officer Wheeles had probable cause and exigent circumstances to make a warrantless entry to effect the arrest.[40]  In examining the circumstances, the Court must view the facts as a reasonable officer would have perceived them that evening.[41]  Here, even assuming that when officer Wheeles crossed the front door of the four-plex he entered defendant's home, it matters not because there was probable cause and exigent circumstances for the officer to make the arrest. The general principle is that an officer cannot enter a person's home without a warrant.  One exception to the warrant requirement, however, is the exigent circumstances doctrine, which provides that an officer may enter a person's home where the officer has an objectively reasonable basis to believe that there was an immediate need to enter to protect the safety of themselves or others.[42]  Officers may not create their own exigencies to enter a person's home without a warrant.[43]  The government bears the burden to prove exigent circumstances.[44]

In *United States v. Walker*,[45] officers acted on a call that two men were feuding and both had weapons.  When the officers arrived at the home, the screen door was closed, but the front

---

[39]*Payton v. New York*, 445 U.S. 573, 590 (1980).

[40]*United States v. Valenzuela*, 365 F.3d 892, 902 (10th Cir. 2004).

[41]*Id.*

[42]*United States v. Najar*, 451 F.3d 710, 718 (10th Cir. 2006).

[43]*United States v. Bonitz*, 826 F.2d 954, 957 (10th Cir. 1987).

[44]*United States v. Wicks*, 995 F.2d 964, 970 (10th Cir. 1993).

[45]474 F.3d 1249 (10th Cir. 2007).

door was slightly ajar.  The officers knocked on the screen door but received no answer.  They then knocked on the front door, which opened sightly because it was already ajar.  After calling for someone to answer and announcing their presence, the officers suddenly heard a person yell "Yeah, and I got a goddamn gun."[46]  The officers entered the house and seized the defendant.  Defendant subsequently argued that the officers entered his home in violation of the Fourth Amendment.  The Tenth Circuit reasoned that the officers had exigent circumstances when they entered defendant's home because they had to take precautions for their safety.[47]  When defendant announced he had a gun, the officers could have retreated but acted to disarm him to protect themselves and others.[48]

Officers in this case similarly attempted to protect their safety and the safety of others.  Before crossing the threshold of the door, officers corroborated the information they had about the suspect.  When defendant said his name was Michael and turned and placed his hands in front of him, officers took the necessary precautions to secure their safety.  Although defendant in this case did not announce that he had a gun, the officers knew that the suspect had shot someone else that evening.  Moreover, unlike in *Walker*, where officers had the option to retreat for their safety, the officers did not have that same option here because the defendant opened the door to the four-plex to the officers' surprise.  Retreating when the officers thought that defendant had a weapon could have been more dangerous under the circumstances.

Defendant objects to a finding of exigency, arguing that Wheeles created the exigency

---

[46]*Id.* at 1251.

[47]*Id.* at 1253.

[48]*Id.*

13

and crossed the threshold before defendant turned and placed his hands out of the officers' sight. But even assuming that after Wheeles asked defendant his name and the defendant responded "Michael Martin," Wheeles then crossed the threshold and effected the arrest, there was still exigent circumstances in the view of a reasonable officer.  Again, at the moment Wheeles learned defendant's name he was face to face with who he thought was the individual who shot a person earlier that evening.  Officers are not required to turn and run from suspected criminals, nor are they required to take unnecessary risks in the field when posed with a threat to themselves and others.  In this case, Wheeles could have reasonably concluded that he needed to act to protect himself and his partner, as they both knew that the suspect was possibly armed. Accordingly, defendant's motion to reconsider is granted, but his motion to suppress is again denied.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Defendant's Motion for Reconsideration (Doc. 54) is granted; however, his Motion to Suppress is denied.

**IT IS SO ORDERED.**

Dated:  April 2, 2009

 S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE